**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

FILED
RICHARD NAGEL
CLERK OF COURT

2022 SEP 13 PM 2: 52

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WESTERN DIV DAYTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 1:22-CR-00078** |
| **Plaintiff,** | **JUDGE DLOTT** |
| **v.** | **INDICTMENT** |
| **NII A. TEI,** | **18 U. S. C. § 2** |
| **Defendant.** | **18 U. S. C. § 1001(a)(2)** |
| | **18 U. S. C. § 1028A** |
| | **18 U. S. C. § 1014** |
| | **18 U. S. C. § 1343** |
| | **18 U. S. C. § 1349** |
| | **18 U. S. C. § 1956(a)(1)(B)(i)** |
| | **FORFEITURE ALLEGATION** |

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

<u>**INTRODUCTION**</u>

1.     The defendant, **NII A. TEI**, was a resident of the Southern District of Ohio. **NII A. TEI** had ownership and control over financial accounts in the name of Provident Home Health Care, LLC and Troy's Home Appliances, LLC.

2.     The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses as well as by assisting in the economic recovery of communities after disasters, including through facilitating loans to small businesses directly or through participating lenders.

3.      In or around March 2020, in response to the economic crisis caused by the coronavirus pandemic, the United States Congress passed the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) ("CARES Act"). Among other things, the CARES Act expanded the Economic Injury Disaster Loan ("EIDL") program administered by the SBA to provide economic relief to businesses that were experiencing a temporary loss of revenue due to the coronavirus pandemic. The EIDL program provided loan assistance, including advances up to $10,000, for eligible entities. EIDL proceeds could be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred; however, such proceeds were not intended to replace lost sales or profits or to be used for expansion of a business or the purchase of fixed assets. Unlike certain other types of SBA-guaranteed loans, EIDL proceeds were issued directly from the United States Treasury and applicants applied through the SBA via an online portal and application.

4.      The EIDL application process, which also used certain outside contractors for system support, collected information concerning the business and the business owner, which were used to determine loan eligibility and amounts, including information as to the gross revenues for the business prior to January 31, 2020; the cost of goods sold; and the number of employees. Applicants would electronically certify that the information provided was accurate and were warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds could result in sanctions, including criminal penalties.

5.      The CARES Act also created the Payment Protection Program ("PPP"). The PPP was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts,

2

utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA, but the PPP loans were directly funded by SBA-approved lenders.

6.     To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

7.     PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia and Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

8.     The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

9.     BlueVine was a third-party participating non-bank lender headquartered in Redwood City, California whose entire PPP application process was automated and conducted

online. BlueVine would issue certain PPP loans under its own name and would electronically transfer other PPP loan applications to its partner banks for processing.

10.     Cross River Bank was a federally insured financial institution as defined in 18 U.S.C. § 20 based in Fort Lee, NJ. Cross River Bank participated in the SBA's PPP as a third-party lender, in some cases working with financial technology companies such as BlueVine to issue PPP loans.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud Affecting a Financial Institution)

11.     Paragraphs 1 through 10 of the Indictment are incorporated here.

12.     From at least June 2020 and continuing through at least May 2021, in the Southern District of Ohio and elsewhere, the defendant, **NII A. TEI**, did knowingly and willfully combine, conspire, confederate, and agree, with others known and unknown to the Grand Jury to commit an offense against the United States, namely wire fraud, in violation of 18 U.S.C. § 1343. That is, the defendant, **NII A. TEI**, and his co-conspirators devised and intend to devise a scheme to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme, used wire communications in interstate commerce which affected a financial institution.

### The Purpose of the Conspiracy

13.     The purpose of the conspiracy was for the defendant, **NII A. TEI**, and his co-conspirators to unlawfully enrich themselves by obtaining PPP proceeds by false and fraudulent pretenses and representations.

## Manner and Means of the Conspiracy

14.     The manner and means by which defendant, **NII A. TEI**, and others known and unknown to the Grand Jury, sought to accomplish the object of the conspiracy, included the following:

15.     The defendant, **NII A. TEI**, and his co-conspirators, held themselves out as individuals who could prepare PPP loan applications for other individuals for pay or as a favor to friends or acquaintances.

16.     It was further part of the conspiracy that the defendant, **NII A. TEI** and his co-conspirators would promote the PPP to individuals claiming that anyone would qualify regardless of whether such individuals actually owned a small business.

17.     As part of the conspiracy, the defendant, **NII A. TEI**, and his co-conspirators would contact individuals on Facebook advertising their services.

18.     It was further part of the conspiracy that the defendant, **NII A. TEI**, and his co-conspirators would request the prospective applicant's name, social security number, and bank statements, but would generally not otherwise request tax records associated with the individual or purported business.

19.     It was further part of the conspiracy that the defendant, **NII A. TEI**, and his co-conspirators knowingly prepared and filed PPP loan applications on behalf of other individuals which were false and fraudulent as to material matters.  For example, **TEI** prepared PPP applications for other individuals which inflated the total amount of gross income such individuals received in tax year 2020 to fraudulently increase the PPP loan issued.  In support of the application, **TEI** would falsify Schedule C (Profit or Loss from Business) forms listing false

income and false expenses to substantiate the fictitious gross income figure claimed on the PPP loan application.

20.     It was further part of the conspiracy that the defendant, **NII A. TEI**, and his co-conspirators would submit and cause to be submitted, by interstate wire transmission, the false and fraudulent PPP loan application and supporting documents to BlueVine, Cross River Bank, and ultimately to the SBA. In furtherance of the conspiracy, the defendant, **NII A. TEI**, and his co-conspirators would in some cases electronically sign the PPP application in the name of the borrower, fraudulently giving the appearance that the borrower had prepared and filed the PPP loan application and concealing the fact that **TEI** and others known and unknown to the Grand Jury had prepared and filed the PPP loan application.

21.     For example, on or about April 30, 2021, the defendant, **NII A. TEI**, prepared, electronically signed, and submitted and caused to be submitted, a PPP loan application in the name of individual P.W. In the application, the defendant, **NII A. TEI**, falsely represented, that P.W.'s total gross income from 2020 was $119,809. In support of the application, the defendant, **NII A. TEI**, included a fraudulent Schedule C which falsely claimed that that P.W.'s "construction business" had gross receipts or sales of $119,809, had advertising expenses of $500, and car and truck expenses of $15,792. In actuality, as the defendant, **NII A. TEI**, well knew, P.W. did not own a construction business, neither did P.W. generate the sales nor incur the expenses claimed. BlueVine transmitted the loan application to its partner bank Cross River Bank for processing and ultimately such application was received by the SBA. Based on the false and fraudulent representations and submissions made by **TEI**, the SBA approved the loan and Cross River Bank funded the loan in the amount of $20,833 into an account controlled by P.W. P.W. paid the defendant, **NII A. TEI**, $5,000 in cash for his assistance in filing the application as **TEI** requested.

22.     As part of the conspiracy, the defendant, **NII A. TEI**, and his co-conspirators, filed over 60 PPP loan applications on behalf of themselves and other individuals.  Lenders funded approximately 30 of these PPP loans worth a total approximate value of over $1.2 million.  For his efforts, the defendant, **NII A. TEI**, earned success fees of between $1,500 and $7,000 per loan. **TEI** spent PPP proceeds for his personal benefit, including for travel, luxury goods, and foreign remittances.

**In violation of 18 U.S.C. § 1349.**

**COUNTS TWO THROUGH FOUR**
**(Wire Fraud Affecting a Financial Institution)**

23.     Paragraphs 1 through 22 of the Indictment are realleged as if fully stated herein.

24.     From at least June 2020 and continuing through at least May 2021, the defendant, **NII A. TEI**, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme is described above, and for the purposes of executing and attempting to execute such scheme and artifice to defraud, on the dates listed below, did knowingly transmit and caused to be transmitted in interstate commerce by means of wire communications, certain signals, signs, and sounds, which affected a financial institution namely:

| Count | Date of Wire Transmission (on or about) | Description of Wire Transmission | Financial Institution Affected |
|-------|------------------------------------------|----------------------------------|-------------------------------|
| 2 | 4/19/2021 | Transmission of the PPP application in the name of A.H. from **TEI** to BlueVine through servers outside of the Southern District of Ohio. | Cross River Bank |
| 3 | 4/22/2021 | Transmission of the PPP application in the name of S.B. from **TEI** to BlueVine through servers outside of the Southern District of Ohio. | Cross River Bank |

| 4 | 4/30/2021 | Transmission of the PPP application in the name of P.W. from **TEI** to BlueVine through servers outside of the Southern District of Ohio. | Cross River Bank |

**All in violation of 18 U.S.C. §§ 1343 and 2.**

## COUNTS FIVE THROUGH SEVEN
### (Aggravated Identity Theft)

25.     On or about the following dates, in the Southern District of Ohio and elsewhere, the defendant, **NII A. TEI**, did knowingly transfer and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit: Wire Fraud Affecting a Financial Institution, in violation of 18 U.S.C. §§ 1343 and 2, knowing that the means of identification belonged to another actual person, as specifically identified below:

| Count | Date (on or about) | Wire Transmission | Initials of Actual Person | Means of Identification Transferred and Used |
|---|---|---|---|---|
| 5 | 4/19/2021 | Transmission of the PPP application in the name of A.H. from **TEI** to BlueVine and affecting Cross River Bank through servers outside of the Southern District of Ohio. | A.H. | Name, social security number, electronic signature |
| 6 | 4/22/2021 | Transmission of the PPP application in the name of S.B. from **TEI** to BlueVine and affecting Cross River Bank through servers outside of the Southern District of Ohio. | S.B. | Name, social security number, electronic signature |
| 7 | 4/30/2021 | Transmission of the PPP application in the name of P.W. from **TEI** to BlueVine and affecting Cross River Bank through servers outside of the Southern District of Ohio. | P.W. | Name, social security number, electronic signature |

**All in violation of 18 U.S.C. § 1028A.**

8

## COUNT EIGHT
### (False Statement on a Loan and Credit Application)

26.     On or about March 21, 2021, in the Southern District of Ohio and elsewhere, the defendant, **NII A. TEI**, knowingly made, and caused to be made, a false statement or report for the purpose of influencing the action of Cross River Bank, the accounts of which are insured by the Federal Deposit Insurance Corporation, in connection with a loan application, that is, the defendant submitted on behalf of T.A. an application for a loan under the Payment Protection Program that contained false information, in that the defendant, **NII A. TEI**, claimed that T.A.'s business had an average monthly payroll of $8,327.00, when in truth and in fact, as the defendant, **NII A. TEI**, well knew, T.A.'s business did not generate the monthly payroll amount claimed.

**In violation of 18 U.S.C. §§ 1014, 2.**

## COUNT NINE
### (False Statement on a Loan and Credit Application

27.     On or about April 19, 2021, in the Southern District of Ohio and elsewhere, the defendant, **NII A. TEI**, knowingly made, and caused to be made, a false statement or report for the purpose of influencing the action of Cross River Bank, the accounts of which are insured by the Federal Deposit Insurance Corporation, in connection with a loan application, that is, the defendant submitted on behalf of A.H. an application for a loan under the Payment Protection Program that contained false information, in that the defendant, **NII A. TEI**, claimed that A.H..'s business had a total amount of gross income of $135,780.00 in 2020, when in truth and in fact, as the defendant, **NII A. TEI**, well knew, A.H.'s business did not generate the gross income amount claimed.

**In violation of 18 U.S.C. §§ 1014, 2.**

**COUNT TEN**
**(False Statement on a Loan and Credit Application**

28.     On or about April 22, 2021, in the Southern District of Ohio and elsewhere, the defendant, **NII A. TEI**, knowingly made, and caused to be made, a false statement or report for the purpose of influencing the action of Cross River Bank, the accounts of which are insured by the Federal Deposit Insurance Corporation, in connection with a loan application, that is, the defendant submitted on behalf of S.B. an application for a loan under the Payment Protection Program that contained false information, in that the defendant, **NII A. TEI**, claimed that S.B.'s business had a total amount of gross income of $102,645.00 in 2020, when in truth and in fact, as the defendant, **NII A. TEI**, well knew, S.B.'s business did not generate the gross income amount claimed.

**In violation of 18 U.S.C. §§ 1014, 2.**

**COUNT ELEVEN**
**(False Statement on a Loan and Credit Application**

29.     On or about April 30, 2021, in the Southern District of Ohio and elsewhere, the defendant, **NII A. TEI**, knowingly made, and caused to be made, a false statement or report for the purpose of influencing the action of Cross River Bank, the accounts of which are insured by the Federal Deposit Insurance Corporation, in connection with a loan application, that is, the defendant submitted on behalf of P.W. an application for a loan under the Payment Protection Program that contained false information, in that the defendant, **NII A. TEI**, claimed that P.W. had a total amount of gross income of $119,809.00 in 2020, when in truth and in fact, as the defendant, **NII A. TEI**, well knew, P.W.'s business did not generate the gross income amount claimed.

**In violation of 18 U.S.C. §§ 1014, 2.**

10

## COUNT TWELVE
### (False Statement or Representation to an Agency of the United States)

30.     On or about July 22, 2020, in the Southern District of Ohio and elsewhere, the defendant, **NII A. TEI**, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, by falsely stating in an Economic Injury Disaster Loan (EIDL) application to the Small Business Administration (SBA) that the business Provident Home Health Care LLC had earned gross revenues over the last 12 months of $230,480.00 and had 13 employees.  These statements or representations were false, because as the defendant, **NII A. TEI**, then and there knew, the business had not earned gross revenues of $230,480.00, nor did it employ 13 individuals.

**In violation of 18 U.S.C. § 1001(a)(2).**

## COUNT THIRTEEN
### (False Statement or Representation to an Agency of the United States)

31.     On or about, July 8, 2020, in the Southern District of Ohio and elsewhere, the defendant, **NII A. TEI**, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, by falsely stating in an Economic Injury Disaster Loan (EIDL) application to the Small Business Administration (SBA) that his business Troy's Home Appliances, LLC had 12 employees and his gross revenues for the 12 months prior to the COVID-19 disaster was $125,000.00.  These statements or representations were false, because as the defendant, **NII A. TEI**, then and there knew, the business had not earned gross revenues of $125,000.00, nor did it employ 12 individuals.

**In violation of 18 U.S.C. § 1001(a)(2).**

## COUNT FOURTEEN
### (Money Laundering)

32.     Between January 18, 2021 and January 19, 2021 in the Southern District of Ohio, the defendant, **NII A. TEI**, did knowingly conduct or attempt financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, namely, wire fraud in violation of 18 U.S.C. § 1343, that is, he purchased four money orders in the amounts of $1,000.00, $500.00, $1,000.00, and $195.00 in cash at a grocery store in Cincinnati, Ohio, representing fees obtained from fraudulently preparing PPP applications and subsequently deposited $2,695.00 in money orders into his PNC Bank account ending in 6539, knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity.

**In violation of 18 U.S.C. § 1956(a)(1)(B)(i).**

## FORFEITURE ALLEGATION ONE

Upon conviction of any of the offenses set forth in Counts One through Four and Eight through Eleven of this Indictment, the defendant, **NII A. TEI**, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such violation(s), including but not limited to:

    a.    A sum of money equal to the amount of proceeds the defendant obtained as a result of the offense(s);

    b.    Thirty-Three Thousand Three Hundred Ninety and 00/100 Dollars ($33,390.00) in United States Currency;

    c.    Contents of US Bank Account No. x5824 in the Name of Troy's Home Appliances, LLC;

    d.    Contents of US Bank Account No. x6482 in the Name of Nii A. Tei;

e.  Contents of US Bank Account No. x9251, in the Name of Nii A. Tei;

f.  Contents of Bank of America Account No. x3700 in the Name of Provident Home Health Care LLC; and

g.  Two (2) Breitling Watches.

### FORFEITURE ALLEGATION TWO

Upon conviction of the offense set forth in Count Fourteen of this Indictment, the defendant, **NII A. TEI**, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

### SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of the defendant, up to the value of the property described above.

**A TRUE BILL.**

_____
**FOREPERSON**

**KENNETH L. PARKER**
**UNITED STATES ATTORNEY**

_____
**EBUNOLUWA A. TAIWO**
**ASSISTANT UNITED STATES ATTORNEY**

13